**BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

In re:

23ANDME, INC., CUSTOMER DATA
SECURITY BREACH LITIGATION

MDL No. 3098

**23ANDME, INC.'S CONSOLIDATED REPLY
IN SUPPORT OF MOTION FOR TRANSFER AND CONSOLIDATION OF
<u>23AND ME, INC. LITIGATION PURSUANT TO 28 U.S.C. § 1407</u>**

**TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................................... 1

II.     ARGUMENT ............................................................................................................. 2

        A.      The Actions Satisfy the Requirements of Section 1407 ................................ 2

                1.      All Actions Involve Common Factual Allegations ............................... 2

                2.      Centralization Is Necessary to Protect Against Inconsistent Judgments and
                        Duplicative Discovery ......................................................................... 4

                3.      Consolidation and Transfer Will Serve the Convenience of the Parties and
                        Witnesses ............................................................................................. 8

                4.      There is Sufficient Numerosity to Support Transfer and Consolidation ............... 10

        B.      The Actions Should be Consolidated in The Northern District of California ................... 11

        C.      Consolidation and Transfer of the Actions Are Appropriate Now ..................... 13

III.    CONCLUSION ....................................................................................................... 15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re [24]7.AI, Inc., Customer Data Sec. Breach Litig.*,
  338 F. Supp. 3d 1345 (J.P.M.L. 2018)..................................................................6

*In re ABA Law Sch. Accreditation Litig.*,
  325 F. Supp. 3d 1377 (J.P.M.L. 2018)................................................................13

*In re Accellion, Inc., Customer Data Security Breach Litig.*,
  543 F. Supp. 3d 1372 (J.P.M.L. 2021)................................................................10

*In re Air West, Inc. Sec. Litig.*,
  384 F. Supp. 609 (J.P.M.L 1974)..........................................................................2

*In re Alodex Corp.*,
  380 F. Supp. 790 (J.P.M.L. 1974)........................................................................11

*In re Alteryx, Inc. Customer Data Sec. Breach Litig.*,
  291 F. Supp. 3d. 1377 (J.P.M.L. 2018)..................................................................6

*In re Ambry Genetics Data Breach Litig.*,
  567 F. Supp. 3d 1130 (C.D. Cal. Oct. 18, 2021)....................................................3

*In re Amoxicillin Patent & Antitrust Litig.*,
  449 F. Supp. 601 (J.P.M.L. 1978)........................................................................11

*In re Arc Airbag Inflators Prods. Liab. Litig.*,
  648 F. Supp. 3d 1378 (J.P.M.L. 2022)...................................................................8

*In re Baby Food Mktg., Sales Practice and Prods. Liab. Litig.*,
  544 F. Supp. 3d 1375 (J.P.M.L. 2021)................................................................10

*In re Bank of Am. Fraudulent Acct. Litig.*,
  No. MDL 3088, 2023 WL 8538726 (J.P.M.L. 2023) ..........................................13

*In re Best Buy Co., Inc. California Song-Beverly Credit Card Act Litig.*,
  804 F. Supp. 23 1376 (J.P.M.L. 2011)................................................................13

*In re Boehringer Ingelheim Pharms., Inc., Fair Lab. Standards Act (FLSA) Litig.*,
  763 F. Supp. 2d 1377 (J.P.M.L. 2011)................................................................14

*In re Cal. Wine Inorganic Arsenic Levels Prods. Liab. Litig.*,
  109 F. Supp. 3d 1362 (J.P.M.L. 2015)...................................................................9

ii

*In re Cessna Aircraft Distrib'ship Antitrust Litig.*,
  460 F. Supp. 159 (J.P.M.L. 1978) ........................................................................ 2

*In re Clark Oil & Refining Corp. Antitrust Litigation*,
  364 F. Supp. 458 (J.P.M.L. 1969) ...................................................................... 11

*In re CleanNet Franchise Agreement Cont. Litig.*,
  38 F. Supp. 3d 1382 (J.P.M.L. 2014) ................................................................... 3

*In re Crest Sensitivity Treatment & Prot. Toothpaste Mktg. & Sales Practices Litig.*,
  867 F.Supp.2d 1348 (J.P.M.L. 2012) ................................................................... 5

*In re Crown Life Premium Litig.*,
  178 F. Supp. 2d 1365 (J.P.M.L. 2001) ............................................................... 12

*In re Daily Fantasy Sports Mktg. & Sales Practices Litig.*,
  158 F. Supp. 3d 1375 (J.P.M.L. 2016) ............................................................... 14

*In re Dollar Tree Stores, Inc. Fair Lab Standards Act (FLSA) and Wage and Hour Litig.*,
  829 F. Supp. 2d 1376 (J.P.M.L. 2011) ............................................................... 14

*Dube v. 23andMe, Inc.*,
  No. 3:23-cv-05768 (N.D. Cal. Nov. 9, 2023) ...................................................... 4

*In re Equifax, Inc., Customer Data Sec. Breach Litig.*,
  298 F. Supp. 3d 1322 (J.P.M.L 2017) ............................................................... 12

*In re Facebook Biometric Info. Privacy Litig.*,
  522 F. Supp. 3d 617 (N.D. Cal. Feb. 26, 2021) ................................................... 3

*In re First Am. Fin. Corp. Customer Data Sec. Breach Litig.*,
  396 F. Supp. 3d 1372 (J.P.M.L. 2019) ................................................................. 6

*In re Forcefield Energy, Inc., Sec. & Derivative Litig.*,
  154 F. Supp. 3d 1351 (J.P.M.L. 2015) ................................................................. 5

*In re FTX Cryptocurrency Exch*,
  2023 U.S. Dist. LEXIS ....................................................................................... 14

*In re FTX Cryptocurrency Exch. Collapse Litig.*,
  2023 U.S. Dist. LEXIS 97738 (J.P.M.L. 2023) ................................................... 5

*In re Gaiam Inc., Water Bottle Mktg., Sales Pracs. & Prods. Liab. Litig.*,
  672 F. Supp. 2d 1373 (J.P.M.L. 2010) ............................................................... 14

*In re Gen. Motors LLC Chevrolet Bolt EV Battery Prod. Liab. Litig.*,
  532 F. Supp. 3d 1413 (J.P.M.L. 2021) ............................................................. 5, 9

*In re Glaceau VitaminWater Mktg. & Sales Practices Litig.*,
  764 F. Supp. 2d 1349 (J.P.M.L. 2011) ............................................................... 10

*In re Hartford COVID-19 Bus. Interruption Prot. Ins. Litig.*,
    493 F. Supp. 3d 1358 (J.P.M.L. 2020)...................................................................5

*In re Home Depot, Inc.*,
    65 F. Supp. 3d 1398 (J.P.M.L. 2014)....................................................................12

*In re Hudson's Bay Company Customer Data Sec. Breach Litig.*,
    326 F. Supp. 3d 1372 (J.P.M.L. 2018)..................................................................13

*In re Kia Hyundai Vehicle Theft Litig.*,
    2022 U.S. Dist. LEXIS 230160 (J.P.M.L. Dec. 13, 2022) ...................................8

*In re Kmart Corp. Customer Data Sec. Breach Litig.*,
    109 F. Supp. 3d 1368 (J.P.M.L. 2015)..................................................................14

*In re Kronos Customer Data Security Breach Litig.*,
    619 F. Supp. 3d 1354 (J.P.M.L. 2022)..................................................................10

*In re Land Rover LR3 Tire Wear Products Liab. Litig.*,
    598 F. Supp. 2d 1384 (J.M.P.L. 2009)..................................................................11

*In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prods. Liab. Litig.*,
    959 F. Supp. 2d 1375 (J.P.M.L. 2013)....................................................................9

*In re Marriott Int'l, Inc.*,
    363 F. Supp. 3d 1372 (J.P.M.L. 2019)..................................................................12

*In re MOVEit Customer Data Sec. Breach Litig.*,
    2023 WL 6456749 (J.P.M.L. 2023).....................................................................6, 7

*In re Oxycontin Prods. Liab. Litig.*,
    395 F. Supp. 2d 1358 (J.P.M.L. 2005)....................................................................5

*In re Phila. Life Ins. Co. Sales Practices Litig.*,
    149 F. Supp. 2d 937 (J.P.M.L. 2001)....................................................................11

*In re Royal Am. Indus., Inc. Sec. Litig.*,
    407 F.Supp. 242 (J.P.M.L. 1976)............................................................................6

*In re Schnuck Markets, Inc., Customer Data Sec. Breach Litig.*,
    978 F. Supp. 2d 1379 (J.P.M.L. 2013).........................................5, 7, 8, 10, 11, 12

*In re Seroquel Prod. Liab. Litig.*,
    542 F. Supp. 2d 1366 (J.P.M.L. 2008)..................................................................10

*Sorensen v. 23andMe Inc.*,
    No. 3:23-cv-5677 (N.D. Cal. Nov. 3, 2023) ..........................................................4

*In re Sorin 3T Heater-Cooler Sys. Prods. Liab. Litig.*,
    273 F. Supp. 3d 1357 (J.P.M.L 2017)...................................................................10

*In re Stockx Customer Data Sec. Breach Litig.*,
   412 F. Supp. 3d 1363 (J.P.M.L. 2019)......................................................6

*In re: Supervalu, Inc., Customer Data Sec. Breach Litig.*,
   67 F. Supp. 3d 1377 (J.P.M.L. 2014)..................................................2, 12

*In re T-Mobile 2022 Customer Data Sec. Breach Litig.*,
   2023 U.S. Dist. LEXIS 97670 (Jun. 2, 2023) ........................................7

*In re Target*,
   11 F. Supp. 3d 1338 (J.P.M.L. 2014)....................................................12

*In re Trilegiant Mbrshp. Program Mktg. & Sales Practices Litig.*,
   828 F.Supp.2d 1362 (J.P.M.L. 2011).......................................................6

*In re Uber Techs., Inc.*,
   304 F. Supp. 3d 1351 (J.P.M.L. 2018) ....................................................7

*In re Waggin' Train Chicken Jerky Pet Treat Prods. Liab. Litig.*,
   893 F.Supp. 2d 1357 (J.P.M.L. 2012).......................................................5

*In re Wells Fargo Paycheck Prot. Program Litig.*,
   481 F. Supp. 3d 1339 (J.P.M.L. 2020).....................................................3

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*,
   293 F. Supp. 2d 1378 (J.P.M.L. 2003)...................................................11

*In re Wireless Tel. Replacement Protection Programs Litig.*,
   180 F. Supp. 2d 1381 (J.P.M.L. 2002)...................................................11

*In re Xarelto (rivaroxaban) ('310) Pat. Litig.*,
   577 F. Supp. 3d 1377 (J.P.M.L. 2021)...................................................10

*In re Yosemite National Park Hantavirus Litigation*,
   24 F. Supp. 3d 1370 (J.P.M.L. 2014).......................................................4

*In re Zappos.com, Inc., Customer Data Sec. Breach Litig.*,
   867 F. Supp. 2d 1357 (J.P.M.L. 2012) ..................................................12

*Zellmer v. Facebook, Inc.*,
   2022 U.S. Dist. LEXIS 60239 (N.D. Cal. Mar. 31, 2022)........................3

*In re Zimmer, Inc. v. Centralign Hip Prosthesis Prods. Liab. Litig. (No. II)*
   366 F. Supp. 2d 1384 (J.P.M.L. 2005).......................................................9

**Statutes**

28 U.S.C. § 1407.......................................................................... *passim*

28 U.S.C. § 1407 (a) ..........................................................................2

v

**Rules**

J.P.M.L. Rule 6.1(c) ................................................................................................................1, 10

I.       **INTRODUCTION**

Judicial economy and fairness to the parties compel MDL consolidation of the more than thirty (30) lawsuits filed against 23andMe, Inc.'s October security incident to date, four (4) of which were filed after 23andMe's motion to transfer and consolidate (ECF No. 1-1) (the "MDL Motion"). Indeed, the actions before this Panel satisfy all requirements for transfer and consolidation pursuant to 28 U.S.C. § 1407. The actions all arise from the same alleged data security incident, in which an unauthorized actor was able to access certain 23andMe customer information as a result of users recycling their 23andMe passwords on other platforms that were subject to earlier security breaches and that are unrelated to 23andMe (the "Incident"). Consolidation and transfer will promote a just and efficient litigation, by avoiding the possibility of disparate outcomes across the United States where plaintiffs seek to represent the same putative classes. Consolidation and transfer to 23andMe's home forum will also serve the convenience of the parties, where most witnesses and documents are available. Now, at the outset of litigation, while all Actions are in their initial stages and parties are able to minimize duplicative litigation in favor of maximizing resources towards a class settlement, transfer to and consolidation in the Northern District of California is warranted.

The majority of parties agree that centralization is proper. Plaintiffs in twenty-five (25) cases have filed briefs in support of the MDL Motion or have otherwise acquiesced to it. ECF Nos. 47; 53. *See also* J.P.M.L. Rule 6.1(c) ("Failure to respond to a motion shall be treated as that party's acquiescence to it."). The nine (9) plaintiffs who oppose centralization improperly compare the Actions[1] to other cases involving only a handful of actions, as opposed to the more than thirty (30) here, or cases in different procedural postures, unlike here, where no responsive pleadings have been filed. The more than thirty (30) Actions before the Panel are both numerous and complex, involve unique counsel in nearly every Action, and present obvious coordination challenges.  This Panel regularly finds that centralization is appropriate in putative class actions arising from data security incidents, and the efficiencies and justice that will be promoted by transfer and consolidation now cannot be denied. The Panel should transfer the Actions for consolidation in the Northern District of California pursuant to § 1407.

---

[1]       The thirty-four cases in front of this Panel for MDL treatment (individually, an "Action," and collectively, the "Actions") are provided in the Corrected Schedule of Actions. ECF No. 45-1.

II.    **ARGUMENT**

A.    **The Actions Satisfy the Requirements of Section 1407**

Section 1407 allows the Panel to transfer and consolidate actions pending in different federal courts where there are "common questions of fact," and transfer "will be for the convenience of parties and witnesses" and "promote the just and efficient conduct of such actions." 28 U.S.C. § 1407 (a). These criteria are balanced in favor of the overall statutory purpose of achieving efficiencies in the pretrial process; no individual criteria is determinative. *In re Cessna Aircraft Distrib'ship Antitrust Litig.*, 460 F. Supp. 159, 161-62 (J.P.M.L. 1978). Each criteria is satisfied here.

1.    **All Actions Involve Common Factual Allegations**

"[W]hen two or more complaints assert comparable allegations against identical defendants based upon similar transactions and events, common factual questions are presumed." *In re Air West, Inc. Sec. Litig.*, 384 F. Supp. 609, 611 (J.P.M.L 1974)*; see also In re: Supervalu, Inc., Customer Data Sec. Breach Litig.,* 67 F. Supp. 3d 1377, 1378 (J.P.M.L. 2014) (centralizing proceedings because "actions share factual questions arising from a data security breach," in which  "[a]ll of the actions involve allegations that customers' personal financial information was compromised as a result of this data security breach").

Here, no party disputes that the Actions all involve the same, or substantially similar, questions of fact and legal theories arising from the same Incident, alleged against the same defendant, and all involve the same putative class and sub-classes of persons in the United States. *See* ECF No. 48 at 3 (plaintiff Bacus acknowledging that "there are common issues of fact surrounding the claims at issue"); ECF No. 49 at 4 (plaintiff Vickery agreeing with 23andMe's MDL Motion that "the Actions all assert claims arising from an alleged data security incident where each Action arises from the same set of alleged facts") (internal quotations omitted); ECF No. 54 at 5 (plaintiff Picha noting that the "Northern District of California [ ] is where the bulk of common facts have occurred"); ECF No. 56 (plaintiff Hu joining plaintiff Bacus's opposition under ECF No. 48). Even the few plaintiffs who oppose centralization do not dispute the presence of common factual questions. *See* ECF No. 50 (plaintiffs Schutz, Vogel, and Mullen taking no position on common factual questions); ECF No. 51 (plaintiff Hoffman, same); *see* ECF No. 52 at 4 (plaintiffs J.S., *et al.*, Friend, *et al*., and Rivers, *et al*. simply contending that "[c]ommon factual questions [ ] are not the sole prerequisite for centralization under Section 1407").

Plaintiffs Bacus and Hu contend that centralization is not warranted, notwithstanding the common factual questions, because the two Illinois actions "assert claims under the Illinois Genetic Privacy Act and common law," that they claim present "distinct legal issues . . . [that] are better solved in Illinois." ECF No. 48 at 5; ECF No. 56 at 1 (joining Bacus's opposition). But Bacus and Hu do not—and cannot—contend that a federal court, such as one sitting in the Northern District of California, is not a competent forum to hear claims arising out of Illinois law. Courts in the Northern District of California have issued some of the most important decisions interpreting and applying Illinois law. *See In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130 (C.D. Cal. Oct. 18, 2021) (ruling on claims brought in the Central District of California on behalf of an Illinois sub-class alleging violations of various provisions under the Illinois Genetic Information Privacy Act); *see also Zellmer v. Facebook, Inc.*, 2022 U.S. Dist. LEXIS 60239 (N.D. Cal. Mar. 31, 2022) (applying Illinois law on statute interpretation to construe and rule on claims arising under the Illinois Biometric Information Privacy Act); *In re Facebook Biometric Info. Privacy Litig.*, 522 F. Supp. 3d 617 (N.D. Cal. Feb. 26, 2021) (overseeing six-year class action litigation and landmark settlement based on alleged violations of the Illinois Biometric Information Privacy Act).

Bacus and Hu quote *In re Wells Fargo Paycheck Prot. Program Litig.*, 481 F. Supp. 3d 1339, 1340 (J.P.M.L. 2020) for the proposition that consolidation is improper where "distinct factual and legal issues" are present. However, Bacus and Hu neglect to include the entirety of the Panel's analysis on common factual questions, which shows that *In re Wells Fargo* is readily distinguishable: "individualized factual issues concern[ed] the circumstances of each loan application," and "further distinct factual and legal issues particular to investors" were present. *Id.* at 1340. Further, the Panel's decision was driven by the fact that "[t]he litigation consist[ed] of five actions," and "the number of actions . . . appear[ed] unlikely to grow," making the prospect of voluntary cooperation among the parties more feasible. *Id*. By contrast, this litigation involves more than thirty (30) Actions, with more tag-along cases expected, all of which have been brought by the same putative classes (23andMe customers who were allegedly affected by the Incident) against the same defendant. The unique factual circumstances that the *Wells Fargo* Panel considered are not present here.

Plaintiffs Bacus and Hu's reliance on *In re CleanNet Franchise Agreement Cont. Litig.*, 38 F. Supp. 3d 1382 (J.P.M.L. 2014) is similarly unavailing. ECF Nos. 48; 56. In denying the § 1407 motion, the Panel

explained that "[w]hile [a] business plan is a common element [in the actions], each action involves different Area Operator defendants . . . and different causes of action" with "little overlap among the putative classes" represented by only three different actions. *Id.* at 1383. Here, the Actions seek to represent the same putative classes and are all brought against the same common defendant—23andMe. Bacus and Hu assert the same causes of actions under the Illinois Genetic Information Privacy Act as plaintiffs do in *Sorensen v. 23andMe Inc.*, No. 3:23-cv-5677 (N.D. Cal. Nov. 3, 2023) and *Dube v. 23andMe, Inc.*, No. 3:23-cv-05768 (N.D. Cal. Nov. 9, 2023) on behalf of the same putative class of Illinois residents allegedly affected by the Incident. Given the commonality of the claims and putative classes, 23andMe will assert the same or substantially similar defenses across nearly all Actions. *See also In re Yosemite National Park Hantavirus Litigation*, 24 F. Supp. 3d 1370, 1370 (J.P.M.L. 2014) (authorizing consolidation because "not only will these actions involve common questions with regard to the alleged negligence of the defendants, but it is anticipated that the United States will assert jurisdictional defenses under the Federal Tort Claims Act (FTCA)"). In short, any attempt by a minority of plaintiffs to dispute the existence of clear common factual allegations is without merit.

### 2.    Centralization Is Necessary to Protect Against Inconsistent Judgments and Duplicative Discovery

Transfer and consolidation of the Actions is necessary to conserve court and party resources and reduce duplicative discovery. All parties agree that the Actions arise from the same Incident and involve common allegations that will likely entail the same discovery. Expert discovery related to damages or liability issues will necessarily overlap in each Action. Transfer is appropriate to mitigate redundant proceedings, including class certification—which should be decided by one court—and to avoid inconsistent rulings. *See also* ECF No. 53 at 5 (plaintiffs Lamons, Tulchinsky, Gill, Navarro, Blackwell, Alperstein, and Shoaee supporting MDL Motion and agreeing that "discovery in each of the actions is likely to substantially overlap and will concern similar issues, including, among others, how 23andMe's system was breached, what security measures," and "centralization sidesteps tremendous inefficiencies in the process of conducting discovery 23andMe had in place to protect against a breach, and what information was compromised in the breach").

The minority of plaintiffs opposing the MDL Motion fail to meaningfully address the real risk of

duplicative discovery and inconsistent judgments. Instead, they make the conclusory assertion that the Actions lack the complexity necessary to warrant centralization. *See* ECF No. 48 at 5; ECF No. 49 at 4; ECF No. 52 at 4-5; ECF No. 56. The decisions that these plaintiffs rely on, however, are manifestly distinguishable. For example, plaintiffs Bacus and Hu cite *In re Oxycontin Prods. Liab. Litig.*, 395 F. Supp. 2d 1358, 1359 (J.P.M.L. 2005), in which the Panel denied centralization because "i) . . . pretrial proceedings are already advanced in certain of the constituent actions, and ii) plaintiffs in all actions subject to the transfer motion are represented by common counsel." ECF No. 48 at 3. By contrast, here, different counsel represent plaintiffs in almost every action, and all cases are in a preliminary posture, with no responsive pleadings filed. *See In re Schnuck Markets, Inc., Customer Data Sec. Breach Litig.*, 978 F. Supp. 2d 1379, 1381 (J.P.M.L. 2013) (finding centralization is most appropriate now because the actions before the Panel are at an early stage); *In re FTX Cryptocurrency Exch. Collapse Litig.*, 2023 U.S. Dist. LEXIS 97738, **4, 7 (J.P.M.L. 2023) (granting centralization for actions in early stages of litigation and involving a large number of plaintiffs' and defense counsel).

Plaintiffs J.S., J.T., A.L., Friend, Parra, Rajamin, and Rivers' reliance on *In re Hartford COVID-19 Bus. Interruption Prot. Ins. Litig.*, 493 F. Supp. 3d 1358 (J.P.M.L. 2020) is similarly misguided. In that decision, the Panel found that centralization was not the most efficient means of advancing cases where many plaintiffs were on the brink of bankruptcy and could not await proceedings to establish a new pretrial structure, particularly where many were pursuing distinct theories of liability. *Id.* at 1360-61. Here, no bankruptcy proceedings are imminent, plaintiffs assert the same legal theories, and all the Actions are in early stages. *In re Hartford* has no application here.

Plaintiffs Bacus and Hu rely on a string of cases that involved six or fewer actions, unlike the more than thirty (30) cases here. *See* ECF No. 48 at 5; ECF No. 56 (citing *DaimlerChrysler Corp. Seat Belt Buckle Prods. Liab. Litig.*, 217 F. Supp. 2d 1376, 1376 (J.P.M.L. 2002) (involving only two actions); *In re Forcefield Energy, Inc., Sec. & Derivative Litig.*, 154 F. Supp. 3d 1351, 1352 (J.P.M.L. 2015) (involving only five actions)); *see also* ECF No. 49 at 4 (Plaintiff Vickery relying on other Panel decisions involving minimal number of actions) (citing *In re Waggin' Train Chicken Jerky Pet Treat Prods. Liab. Litig.*, 893 F.Supp. 2d 1357, 1358 (J.P.M.L. 2012) (involving three actions); *In re Crest Sensitivity Treatment & Prot. Toothpaste Mktg. & Sales Practices Litig.*, 867 F.Supp.2d 1348 (J.P.M.L. 2012) (involving three actions);

*In re Trilegiant Mbrshp. Program Mktg. & Sales Practices Litig.*, 828 F.Supp.2d 1362, 1362-63 (J.P.M.L. 2011) (involving <u>six</u> actions *and* <u>eight</u> different defendants); *In re Royal Am. Indus., Inc. Sec. Litig.*, 407 F.Supp. 242, 243 (J.P.M.L. 1976) (involving <u>two</u> actions)). But in each of these cases, the Panel concluded that MDL treatment was inappropriate because of the small number of actions, often involving common counsel, which indicated that informal coordination would be better a means to achieve efficiency. Here, more than thirty (30) Actions have been filed involving almost entirely distinct counsel who appear unlikely to informally coordinate, as made clear in the number of filings and disparate schedules proposed or agreed upon in only the earliest-filed *Santana* matter alone.

Moreover, plaintiffs J.S., J.T., A.L., Friend, Parra, Rajamin, and Rivers mistakenly argue that 23andMe must satisfy a heightened burden to obtain centralization here. *See* ECF No. 52 at 4. Not so. Rather, the cases that these plaintiffs cite for this misapplied "heightened" standard show only that the Panel has in the past denied transfer and consolidation where a few, as opposed to more than thirty (30), actions are pending. *See In re Stockx Customer Data Sec. Breach Litig.*, 412 F. Supp. 3d 1363, 1364 (J.P.M.L. 2019) (litigation consisting of only <u>three</u> actions, including one potential tag-along action; Panel found that "this litigation is not growing—the last of the five related cases was filed nearly three months ago"); *In re First Am. Fin. Corp. Customer Data Sec. Breach Litig.*, 396 F. Supp. 3d 1372, 1372-73 (J.P.M.L. 2019) (litigation of <u>fourteen actions</u>, with seven potential tag-along actions; Panel denied transfer because some cases already transferred under the first-to-file rule); *In re [24]7.AI, Inc., Customer Data Sec. Breach Litig.*, 338 F. Supp. 3d 1345, 1346 (J.P.M.L. 2018) (Panel denied transfer of only <u>three</u> actions, including only potential tag-along action); *In re Alteryx, Inc. Customer Data Sec. Breach Litig.*, 291 F. Supp. 3d. 1377, 1377 (J.P.M.L. 2018) (Panel denied transfer of only <u>three</u> actions pending in three districts). As with all other authorities cited by plaintiffs, none of these cases are remotely similar to the matter before the Panel, involving more than thirty (30) total Actions, unique counsel in nearly all cases, and where parties outside of the proposed transferee forum oppose centralization.

Indeed, the Panel has regularly found that cases involving data security incidents rise to the level of complexity warranting centralization. *See e.g.*, *In re MOVEit Customer Data Sec. Breach Litig.,* 2023 WL 6456749, at *2 (J.P.M.L. 2023) ("All actions can be expected to share common and complex factual questions as to how the MOVEit vulnerability occurred, the circumstances of the unauthorized access and

data exfiltration, and [defendant]'s response to it, as well as the response of various downstream MOVEit users and customer-facing defendants with whom plaintiffs did business.); *In re T-Mobile 2022 Customer Data Sec. Breach Litig.*, 2023 U.S. Dist. LEXIS 97670, * 2 (Jun. 2, 2023) ("These putative class actions share complex factual questions arising from TMobile's announcement [ ] that a data security breach of its network occurred in late 2022 in which an unauthorized actor accessed and acquired files on its network, including personally identifiable information of 37 million current and former customers[, and c]ommon factual questions will include: T-Mobile's data security practices and whether those practices met industry standards, how the unauthorized actor obtained access to T-Mobile's system, the extent of the personal information affected by the breach, and when T-Mobile knew or should have known of the breach."); *In re Uber Techs., Inc.*, 304 F. Supp. 3d 1351, 1353 (J.P.M.L. 2018) ("These putative class actions share complex factual questions arising from Uber's announcement [ ] that a data security breach of its network occurred in late 2016 in which the personal information of 57 million Uber users was downloaded by unauthorized individuals outside the company [and c]ommon factual questions are presented with respect to Uber's practices in safeguarding its users' personal information, the investigation into the breach, the alleged delay in disclosing the breach, and the nature of the alleged damages.); *see also* ECF No. 47 at 4 (plaintiff Scott collecting consumer and data privacy cases that the Panel found are particularly appropriate for transfer and consolidation). Further, while the core facts stem from the same alleged Incident, the complex nature of the data privacy cases itself leads to complex litigation practice, as this Panel has repeatedly found. *See In re MOVEit,* 2023 WL 6456749, at *2 ; *In re T-Mobile 2022 Customer Data Sec. Breach Litig.*, 2023 U.S. Dist. LEXIS 97670, * 2 (J.P.M.L. 2023); *In re Uber Techs., Inc.*, 304 F. Supp. 3d 1351, 1353 (J.P.M.L. 2018).

Further, "centralization is most appropriate now" because the Actions are at an early stage. *In re Schnuck*, 978 F. Supp. at 1381. The Panel may centralize now before "additional tag-along actions also may be filed" purporting to involve millions of individuals. *Id*. To date, no discovery has been propounded (other than in a limited capacity related to mediation efforts), no responsive pleadings have been filed, the deadline to respond to the pleadings has been extended to until at least February 1, 2024, and the only motions pending before the courts in the Actions are 23andMe's motions to stay pending the Panel's ruling here. Centralization at this early stage is appropriate to serve Section 1407's goals of efficiency and

consistency in outcomes for the numerous and complex Actions before the Panel and clearly preferable to repeated (opposed) motions to transfer and stay in the absence of centralization by the Panel now.

**3.      Consolidation and Transfer Will Serve the Convenience of the Parties and Witnesses**

23andMe has its headquarters near the Northern District of California where most of the plaintiffs purport to be residents, which this panel has repeatedly found favors transfer to the proposed forum for the convenience of the parties. *See In re Arc Airbag Inflators Prods. Liab. Litig.*, 648 F. Supp. 3d 1378, 1380 (J.P.M.L. 2022); *In re Kia Hyundai Vehicle Theft Litig.*, 2022 U.S. Dist. LEXIS 230160 (J.P.M.L. Dec. 13, 2022), transferred, 2023 U.S. Dist. LEXIS 102833 (C.D. Cal. June 13, 2023) (holding that Central District of California was appropriate forum where the main defendants were based in Orange County, California because centralization served convenience of parties and witnesses, promoted just and efficient conduct of litigation, and offered substantial opportunity to streamline pretrial proceedings); *see also* ECF No. 47 at 3 (plaintiff Scott agreeing that "the plaintiffs in these actions will require depositions of the same persons and discovery of the same documents," and, therefore, "[m]aintenance of separate actions across multiple federal district courts would be greatly inconvenient for both parties and witnesses"); ECF No. 53 at 6 (plaintiffs Lamons, Tulchinsky, Gill, Navarro, Blackwell, Alperstein, and Shoaee agreeing that the Northern District of California "would be a convenient and easily accessible location for the 23andMe parties and witnesses, and relevant documents will be found there").

The prospect of additional actions, potentially filed in other districts, also raises the risk that the Actions may be not resolved in a just and efficient manner absent centralization now, as this Panel has found. *See In re Schnuck,* 978 F. Supp. 2d at 1381. Indeed, given the widespread impact of the Incident (although 23andMe contends that the intrusion was very limited and caused no actual damage), and ongoing press coverage of the Actions, the possibility of additional tag-along actions is very high. Class action plaintiffs' firms continue to advertise for plaintiffs to sue over the Incident.[2] Centralization is highly

---

[2]      *See e.g.*, Levi & Korsinsky, LLP (https://www.accesswire.com/826194/levi-korsinsky-reminds-23andme-consumers-of-an-investigation-into-recent-data-breach) (publishing press release as recently as January 18, 2024); Girard Sharp LLP (https://www.girardsharp.com/results-investigations/23andme-data-breach-investigation/); The Lyon Firm (https://www.thelyonfirm.com/blog/23andme-data-theft-investigation/).

preferable to individual motions to transfer and stay pending transfer for cases that 23andMe expects will be filed in the future.

Plaintiffs Bacus and Hu argue that the prospect of future cases that might be filed, but have not yet been filed, does not any support centralization. *See* ECF No. 48 at 6; ECF No. 56; *see also* ECF No. 52 at 3 (plaintiffs J.S., *et al.*, Friend, *et al.*, and Rivers, *et al.*, same); ECF No. 54 at 3-4 (plaintiff Picha, same). Bacus and Hu cite to *In re Zimmer, Inc. v. Centralign Hip Prosthesis Prods. Liab. Litig. (No. II)* for this argument, but fail to recognize that, in that case, the Panel's decision was based on the fact that "pretrial proceedings had been ongoing in [one] district for over two years, and ii) plaintiff in the [other district] action was represented by [same] counsel," and the Panel found no persuasive reason as to why transfer was appropriate "at a very advanced stage." 366 F. Supp. 2d 1384, 1385 (J.P.M.L. 2005). None of these facts are present here.

Plaintiffs J.S., Friend, and Rivers also rely on dissimilar cases in which centralization was denied because actions were advanced, a year or more had passed since the incident giving rise to plaintiffs' claims, or only a handful of actions were filed. *See* ECF No. 52 at 3, ECF No. 54 at 3-4 (citing *In re Gen. Motors LLC Chevrolet Bolt EV Battery Prod. Liab. Litig.*, 532 F. Supp. 3d 1413, 1415 (J.P.M.L. 2021) (denying centralization where "there are just eight actions pending" and a 1404 motion had already been fully briefed); *id.* (citing *See In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prods. Liab. Litig.*, 959 F. Supp. 2d 1375, 1376 (J.P.M.L. 2013) (Panel disinclined to account for potential future add-on cases where only three actions total pending and a year had passed since the events that gave rise to claims); *see also* ECF No. 52 at 3 (citing *In re Cal. Wine Inorganic Arsenic Levels Prods. Liab. Litig.*, 109 F. Supp. 3d 1362, 1363 (J.P.M.L. 2015) (denying centralization where only four actions were filed, involving common counsel working in coordination, and cases were not complex). By contrast, here, litigation is in its initial stages within a few months of the Incident giving rise to plaintiffs' claims.

The administrative burdens of moving to transfer and staying each individual action, as opposed to filing a notice of follow-on action, is significant. The time and expense of these litigation efforts affects plaintiffs and defendant (and the courts) equally and further reduces the resources available to the parties to focus on a settlement. It is necessary and appropriate to consolidate all Actions now in order to ensure that all parties (including prospective plaintiffs) are able to conduct litigation in a just and efficient manner.

*See In re Glaceau VitaminWater Mktg. & Sales Practices Litig.*, 764 F. Supp. 2d 1349, 1351 (J.P.M.L. 2011) (consolidating three putative class actions where "it seems likely that additional related actions could be filed"); *In re Schnuck Markets, Inc.*, 978 F. Supp. at 1381 ("centralization is most appropriate now" because the Actions are at an early stage, and the Panel may centralize now before "additional tag-along actions also may be filed in this litigation").

Plaintiffs Bacus and Hu further argue that transfer and consolidation should be denied based on their opposition alone. ECF No. 48 at 7; ECF No. 56. But these outlying oppositions are contrary to positions of twenty-five of the plaintiffs who favor § 1407 centralization now. *See* ECF Nos. 47; 53; *see also* J.P.M.L. Rule 6.1(c) ("Failure to respond to a motion shall be treated as that party's acquiescence to it."); *In re Xarelto (rivaroxaban) ('310) Pat. Litig.*, 577 F. Supp. 3d 1377, 1377–78 (J.P.M.L. 2021) (centralizing litigation under § 1407 where two defendants did not oppose the motion for centralization and remaining defendants "did not respond to the motion and, therefore, are deemed to acquiesce to it"); *In re Seroquel Prod. Liab. Litig.*, 542 F. Supp. 2d 1366, 1367 (J.P.M.L. 2008) (finding that plaintiffs who did not respond to a transfer motion "acquiesce[d] to inclusion of their claims in MDL"). The Actions are, therefore, nothing like the cases in the Panel decisions denying centralization based on parties' oppositions, upon which Bacus and Hu rely. *See* ECF No. 48 at 8; ECF No. 56 (citing *In re Kronos Customer Data Security Breach Litig.*, 619 F. Supp. 3d 1354, 1354 (J.P.M.L. 2022) (denying centralization where all parties except one opposed the motion); *In re Accellion, Inc., Customer Data Security Breach Litig.*, 543 F. Supp. 3d 1372, 1372-73 (J.P.M.L. 2021) (denying centralization where most parties opposed); *In re Baby Food Mktg., Sales Practice and Prods. Liab. Litig.*, 544 F. Supp. 3d 1375, 1375 (J.P.M.L. 2021) (denying centralization where parties in twenty actions opposed, and only four supported transfer and consolidation under Section 1407); *In re Sorin 3T Heater-Cooler Sys. Prods. Liab. Litig.*, 273 F. Supp. 3d 1357, 1357 (J.P.M.L 2017), (denying centralization where all responding parties opposed centralization, including defendants)). Transfer and consolidation under § 1407 will provide clear efficiencies to this litigation—a benefit to all parties. The MDL Motion should be granted.

### 4.    There is Sufficient Numerosity to Support Transfer and Consolidation

While there is no strict standard for sufficient numerosity to support transfer and consolidation under Section 1407, the Panel has routinely ordered transfer and consolidation of five or fewer cases—far

less than the more than thirty (30) filed here. *See In re Wireless Tel. Replacement Protection Programs Litig.*, 180 F. Supp. 2d 1381, 1382 (J.P.M.L. 2002) (granting transfer and centralization of three consumer protection cases); *In re Phila. Life Ins. Co. Sales Practices Litig.*, 149 F. Supp. 2d 937, 938 (J.P.M.L. 2001) (granting transfer of two deceptive insurance sales cases); *In re Amoxicillin Patent & Antitrust Litig.*, 449 F. Supp. 601, 603 (J.P.M.L. 1978) (granting transfer of three cases involving patent and antitrust issues); *In re Alodex Corp.*, 380 F. Supp. 790, 791 (J.P.M.L. 1974) (granting transfer of three securities actions). The Panel can also consolidate cases that are pending in as few as two District Courts. *See In re Clark Oil & Refining Corp. Antitrust Litigation*, 364 F. Supp. 458, 459 (J.P.M.L. 1969) (granting motion to transfer an action pending in the Eastern District of Wisconsin to the Northern District of Illinois for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. §1407, and rejecting argument that "the minimal number of cases and relative simplicity of the common factual questions" support denial of the motion).

Here, thirty-six (36) total cases have been filed in the United States, across three (3) districts. It is likely that additional cases will be filed, potentially in a multitude of additional districts. *See In re Schnuck,* 978 F. Supp. 2d at 1381. There is sufficient numerosity for transfer and consolidation of the actions against 23andMe.

### B.    The Actions Should be Consolidated in The Northern District of California

The Northern District of California remains the most appropriate venue for centralization of the Actions. The Panel tends to favor consolidation at the site of the first-filed action. *See, e.g., In re Land Rover LR3 Tire Wear Products Liab. Litig.*, 598 F. Supp. 2d 1384, 1386 (J.M.P.L. 2009) (holding that the forum was "an appropriate transferee forum because the first-filed and most procedurally advanced actions [we]re pending there."); *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 293 F. Supp. 2d 1378, 1380 (J.P.M.L. 2003) (transferring cases to a district which, among other things, presides over "the first-filed and furthest advanced actions"). Here, the first-filed action, *Santana et al. v. 23andMe, Inc.*, was filed in the Northern District of California on October 9, 2023.

Moreover, the majority (thirty-one) of the Actions are pending in the Northern District of California and will likely encompass the greatest number of potential class members, which favors transfer to that

forum.[3] *See In re Home Depot, Inc*., 65 F. Supp. 3d 1398, 1400 (J.P.M.L. 2014) (centralizing data breach actions to district near defendant's headquarters since "[n]ineteen of the thirty-one actions and potential tag-along actions" were pending there, and "the district is easily accessible for the parties in this litigation"); *Conseco Life Ins. Cost of Ins. Lit*., 323 F. Supp. 2d 1381, 1383 (J.P.M.L. 2004) (centralizing where a "plurality of cases" were pending); *In re Crown Life Premium Litig*., 178 F. Supp. 2d 1365, 1366 (J.P.M.L. 2001) ("[W]hile transfer of a particular action might inconvenience some parties to that action, such a transfer often is necessary to further the expeditious resolution of the litigation taken as a whole.").

Further, 23andMe is headquartered in Northern District of California, with its principal place of business in that District, and as such, most witnesses and documents—e.g., its employees handling the Incident—are located in the District. *See In re Zappos.com,* 867 F. Supp. at 1358 (transferring to district that "has the strongest connection to this litigation, inasmuch as [defendant] is based [there] . . . personnel who responded to the data breach are located in this district, as are the servers from which customer data was obtained, in addition to other potentially relevant documents and witnesses"). The Panel has consistently transferred data breach cases coordinated as MDLs to the district where the defendant is headquartered, because, as here, "relevant documents and witnesses thus likely will be found there." *In re Equifax, Inc., Customer Data Sec. Breach Litig*., 298 F. Supp. 3d 1322, 1326 (J.P.M.L 2017); *In re Marriott Int'l, Inc.*, 363 F. Supp. 3d 1372, 1374–75 (J.P.M.L. 2019) (same); *In re Target*, 11 F. Supp. 3d 1338, 1339 (J.P.M.L. 2014) (same); *In re Supervalu*, 67 F. Supp. 3d 1377, 1378 (J.P.M.L. 2014) (same); *In re Schnuck*, 978 F. Supp. 2d at 1381–82 (same); *In re Zappos.com*, 867 F. Supp. 2d at 1358 (same). Indeed, centralization in that district will allow potential 23andMe witnesses and persons most qualified to participate in discovery more freely. Even the minority of plaintiffs who oppose the MDL Motion agree that the Northern District is the most appropriate forum for consolidation. *See* ECF No. 49 at 5-6 (plaintiff Vickery agreeing that if MDL treatment is granted, the Northern District of California is the most appropriate transferee court); ECF No. 50 at 1 (plaintiffs Schutz, Vogel, and Mullen, same); ECF No. 54

---

[3]     The presence of numerous state court actions near the Northern District of California also weighs in favor of transfer and consolidation there. *See e.g., In re Zappos.com, Inc., Customer Data Sec. Breach Litig*., 867 F. Supp. 2d 1357, 1358 (J.P.M.L. 2012) ("With a pending Nevada state court action, centralization in the District of Nevada will facilitate coordination between the federal and state court action.").

at 4-5 (plaintiff Picha, same).

For all of these reasons, the Northern District of California is the appropriate choice for the MDL proceedings.

### C.      Consolidation and Transfer of the Actions Are Appropriate Now

In an effort to avoid the outcome compelled by the weight of the Section 1407 factors in favor of centralization here, some plaintiffs argue that the MDL Motion should be denied in favor of informal coordination or transfer under Section 1404 first. *See* ECF No. 48 at 6 (Bacus arguing that "transfer and centralization under Section 1407 should be used as a last solution," and "it would be wholly premature now where the parties have barely addressed the possibility of transfer under Section 1404") (internal quotations omitted). *See also* ECF No. 49 at 2-3, 5 (plaintiff Vickery, same); ECF No. 50 at 2 (plaintiffs Schutz, Vogel, and Mullen, same); ECF No. 51 at 2-3 (plaintiff Hoffman, same); ECF No. 52 at 3 (plaintiffs J.S., J.T., A.L., Friend, Parra, Rajamin, Rivers, same); ECF No. 54 at 2-4 (plaintiff Picha, same); ECF No. 56 (plaintiff Hu, same).  Plaintiffs generally all rely upon *In re Best Buy Co., Inc. California Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 23 1376 (J.P.M.L. 2011) for this proposition. *Id*. at 1379. But in *In re Best Buy*, the Panel denied the MDL petition because the "involved parties are amenable to Section 1404 transfer." *Id*. at 1376, 1378. Here, by contrast, plaintiff Hu, who filed suit in the Northern District of Illinois, opposes Section 1404 transfer, and plaintiff Bacus has not agreed to 1404 transfer. *See* Decl. of Rebekah S. Guyon in support of 23andMe's motion to stay pending MDL treatment in *Santana v. 23andMe, Inc.* (3:23-cv-05147-EMC) (ECF No. 58-1).

Some plaintiffs further argue that transfer and consolidation should be denied because the parties can informally coordinate, but the cases these plaintiffs rely upon where the Panel denied centralization based on the likelihood of informal coordination are readily distinguishable. *See* ECF No. 48 at 4; ECF No. 49 at 4-5; ECF No. 52 at 2-3; ECF No. 54 at 4; ECF No. 56. For example, the Panel has in the past denied centralization where only a few actions involving the same counsel are pending. *See e.g.*, *In re Bank of Am. Fraudulent Acct. Litig.*, No. MDL 3088, 2023 WL 8538726, at *2 (J.P.M.L. 2023) (involving only seven actions at time of § 1407 motion, of which three were dismissed by the time the motion was being decided); *In re Hudson's Bay Company Customer Data Sec. Breach Litig.*, 326 F. Supp. 3d 1372, 1373 (J.P.M.L. 2018) (only four pending actions involved); *In re ABA Law Sch. Accreditation Litig.*, 325 F. Supp. 3d 1377,

1378-79 (J.P.M.L. 2018) (only three cases involved and parties represented by common counsel); *In re Kmart Corp. Customer Data Sec. Breach Litig.*, 109 F. Supp. 3d 1368, 1368 (J.P.M.L. 2015) (litigation involving only five actions total); *In re Dollar Tree Stores, Inc. Fair Lab Standards Act (FLSA) and Wage and Hour Litig.*, 829 F. Supp. 2d 1376, 1376-77 (J.P.M.L. 2011) (plaintiffs involved in only four actions and common counsel); *In re Gaiam Inc., Water Bottle Mktg., Sales Pracs. & Prods. Liab. Litig.*, 672 F. Supp. 2d 1373, 1373 (J.P.M.L. 2010) (only two cases pending involving just three parties); *In re Boehringer Ingelheim Pharms., Inc., Fair Lab. Standards Act (FLSA) Litig.*, 763 F. Supp. 2d 1377, 1378 (J.P.M.L. 2011) (involving only four cases with three common counsel, rendering informal coordination feasible, particularly where one case had been filed years prior and already advanced through discovery and substantive rulings). Here, more than thirty (30) Actions are before the Panel, each involving almost entirely unique counsel. Indeed, plaintiffs' counsel's disparate positions on scheduling in the earliest-filed case and consolidation and transfer here belie any assertion that informal coordination will be successful or preferable to § 1407 treatment. *See e.g.*, Joint Case Management Statement in *Santana v. 23andMe, Inc.* (3: 23-cv-05147-EMC) (ECF No. 54 at 2) (plaintiffs disagreeing on setting an initial schedule for appointment of interim class counsel); Decl. of Rebekah S. Guyon in support of 23andMe's  motion to continue case management conference in *Santana v. 23andMe, Inc.* (3: 23-cv-05147-EMC) (ECF No. 53-1 at ¶ 14) (noting more than twenty-five (25) stipulations filed across related cases to continue response deadlines and case management conferences, or both).

Rather, the Panel has regularly found that where, as here, a large number of cases are filed, transfer via § 1404 and informal coordination are unfeasible options. *See In re FTX Cryptocurrency Exch*, 2023 U.S. Dist. LEXIS, at *4 (granting centralization where litigation involved eight actions across two districts, with eleven tag-along actions, and "the large number of plaintiffs' and defense counsel will pose serious obstacles to informal coordination"); *In re Daily Fantasy Sports Mktg. & Sales Practices Litig.*, 158 F. Supp. 3d 1375, 1379 (J.P.M.L. 2016) ("[I]nformal coordination or cooperation among the parties and courts with respect to common discovery or pretrial motions[] are less practicable given the large number of actions and courts" across seventeen actions). In fact, there is no consensus as to whether all plaintiffs would even consent to a § 1404 transfer at this stage. *See* Decl. of Rebekah S. Guyon in support of 23andMe's motion to stay pending MDL treatment in *Santana v. 23andMe, Inc.* (3:23-cv-05147-EMC)

(ECF No. 58-1) (stating that plaintiff Hu opposes such transfer and plaintiff Bacus has not yet expressed agreement to such transfer). The volume and complexity of the Actions present both current and prospective challenges to even the best intentioned, informal coordination efforts. These challenges do not serve the convenience of the parties, including expected witnesses, and do not promote just and efficient conduct of the Actions. Finding an individual path towards resolution in each of the more than thirty (30) Actions will be costly for all parties, with diminishing efficiency gains and diminutive impacts to any class settlement. Given these complexities, consolidation and transfer of the Actions pursuant to § 1407 is appropriate now.

## III.   **CONCLUSION**

For the reasons stated in this Memorandum, 23andMe respectfully requests that this Panel enter an order transferring the actions on the attached Schedule of Actions to the Northern District of California for consolidated pretrial proceedings.

DATED:  January 25, 2024                     GREENBERG TRAURIG, LLP

By:      */s/ Ian C. Ballon*
                     Ian C. Ballon
                     GREENBERG TRAURIG, LLP
                     Ballon@gtlaw.com
                     1900 University Avenue, 5th Floor
                     East Palo Alto, California 94303
                     Tel: 650-289-7881; Fax: 650-462-7881
                     Attorneys for Defendant, 23andMe, Inc., 23andMe
                     Pharmacy Holdings, Inc., 23andMe Holding Co.

15